Pitney Bowles. Mr. Friedman? Thank you, Your Honor. May it please the Court, good morning. The Court should grant RICO judgment as a matter of law with respect to Pitney Bowes' anticipation and obviousness defenses as to all five patent claims at issue in this appeal. The Court should rule pursuant to its de novo review. How do you get by the SCSI standard just for starters? With respect to which claims, Your Honor? It doesn't matter. It seems like you get nailed on all of them by SCSI, don't you? I don't think so, Your Honor. The SCSI protocol is just a network protocol. It does not address the problems or offer the solutions that are provided by the Modiyama patents. First, with respect to claims 4 and 77 of the world. It doesn't have to offer the solutions. It simply has to contain each and every element of the claimed invention. It certainly appears to identify the computers to each other. Invention seems to require little else. It doesn't, Your Honor, with respect, identify the computers to one another. Let me explain how. As Pitney Bowes presented its anticipation defense, all that SCSI does is to have the computers send a SCSI ID, which tells you- What is an ID? It's an identity. Why isn't that enough? It's not enough because the Markman order in this case says that the identity of the operation panel, the identity of the computer, has to be an indicia such as a serial number or a model number that corresponds to the computer. That means that it has to tell you what it is, not where it is. It sounds to me as though you're challenging the claim construction when you didn't challenge the claim construction down below or in your opening brief. It doesn't say it has to be a model number. It just says it has to be an identifier. Why isn't this sufficient as an identifier? Your Honor, I'm not saying that it has to be a model number or a serial number. Those are just the examples that are provided. It has to be an identity that corresponds to the device. Ms. Fredrickson, the- Picking up where my colleague started, doesn't the judge say that any indicia of identity will do? Aren't the claim construction terms that were bound to any indicia? It says any indicia that corresponds to the operation terminal or the operation panel, which is not any indicia at all. It also gives as examples a model number- Because, Your Honor, that would not be consistent with the invention as claimed and as specified in the patents at all. Merely telling you where the device is on a SCSI network or merely telling you what color the device is, is not what the invention is about. That may be. It may be that he came up with an incorrect claim construction, but you didn't challenge that. That's your problem. Excuse me, Your Honor. It is not an incorrect claim construction. It was a stipulated claim construction, and I embrace that claim construction. It says any indicia that corresponds to the operation terminal. In the context of the invention, reading the claim in light of the specification, reading the construction in light of the specification, giving you a location, which is all that the SCSI ID does, which is undisputed, does not serve the invention as described in the claims and in the specification. There's no dispute that the SCSI ID, for example, as well as the Node ID in the AppleTalk protocol that serves the Apple LaserWriter reference, all it describes to you is location. That is because those are merely network protocols. The only issue there in SCSI and in the AppleTalk protocol is how to get the message to a particular location. It's akin to a mail drop. It tells you where it is. It doesn't tell you what it is. As Ms. Fredrickson said, when I cross-examined her, I said, Ms. Fredrickson, if I asked you your identity, would you give me your address? Of course, she said, no, I wouldn't give you my address because my address could change. I would give you my name so that you know who I am. Then, if we were interacting in a computer system, I could go to a look-up table and determine her characteristics and determine how I should interact with her, how I can collaborate with her in service of the end user, which is what this invention is all about. That was a rather interesting exchange, which we read in the briefs. It has so little to do with computers. People are not computers. We identify them differently. Machines identify themselves to each other in the simplest terms. Your Honor, identifying the computer by its location serves the purpose of… Why doesn't that satisfy the any-indicia meaning of our claim construction? Because Your Honor, if it merely said any-indicia, it could, but it says any-indicia that corresponds to the operation panel. The location is not the indicia. How do we know that? We know that for a couple of reasons. Number one, it says any-indicia, e.g., a model number, a serial number, that corresponds… Corresponds to, but that's a general term as well. As long as it's somehow related, is that what corresponds mean? I don't believe so, Your Honor. In the context of this invention, you can't just take, as Your Honors have taught us, you can't just take the claim and read it in a vacuum. Therefore, you can't take the Markman claim construction and read it in a vacuum. You read it in light of the invention. But it's not saying a unique identifier. It's saying any-indicia. We're not arguing that it needs to… You seem to be arguing for a unique, one-of-a-kind, model number identifier. Absolutely not, Your Honor. Let me make that perfectly clear. It has to be an-indicia that allows the other device in this communication that is taking place to know what it is. It doesn't have to be unique. It can be a model number. Well, a model number is going to be unique, isn't it? No, it's not, Your Honor. A model number, any number of individual devices with individual unique serial numbers can have the same model number. My Honda Civic is the same model as someone else's Honda Civic, but they have different VIN numbers. Stick with computers. With computers, Your Honor, a computer can have a serial number that is unique to that computer, but it can have a model ID. In the context of Dr. Motoyama's invention, he provided for unique identifiers to be communicated, such as serial numbers. He also provided for classification identifiers to be communicated. It is not a question of any-indicia at all. Sticking to computers, Your Honor, again, knowing where this is located, knowing where the computer is located on a SCSI bus is not what the invention is about. The invention is about- Give me a little bit about just the whole purpose of this invention. All we're doing is just linking two devices so they cooperate, right? Absolutely not, Your Honor. This is not about modularization alone. This is not about bidirectional communication alone. I read the entire patent, which isn't a lot, by the way, and could get nothing out of it other than what I just said. It's identifying two devices so that they can work together. I'm trying to figure out why the district court isn't entirely correct to say as long as there's any-indicia that allows that, we have satisfied what your patent seems to require. Your Honor, the patent does not say that- Tell me what it does more than what I've just said. Two machines identifying themselves to each other so they can work together. It's exactly what Your Honor just said. It's two machines identifying each other in a way so that they can work together in service of the end user. In other words, if you have an operation terminal, which has now been hived off from the printer engine, what the invention claims is that the operation terminal identifies itself in a way to the printer so that the printer knows what it is and knows what kind of commands it's going to get. Let me be honest with you here. What's going on in my head, even though it's not before us, how can that be an invention in 1990? I had computers in 1990. My memory's not perfect, but it's certainly clear that I sent messages to my printer in 1990. What was unique about your patent at that point? Why is it novel? Why isn't it anticipated by all of this? Your Honor, obviously, with respect, the patent examiner and the patent office deemed this to be a novel invention. We have now a lot of evidence that wasn't presented to him that shows that it may not be. You're entitled to look at that evidence. I embrace your looking at that evidence. None of that evidence, none of the four prior art references upon which Pitney Bowes is relying teaches this invention. It does not place a person of ordinary skill in possession of a patent. I'm prepared to rise to the challenge, Your Honor. I have risen to the challenge in our briefs and to say to you that while Your Honor says that he recollects that in 1990— That's not in the record, but I'm being honest with you that that's a lot of what's going on in my head. So I'm not from Missouri, but I will say, show me. And I say, show me to Pitney Bowes. And Pitney Bowes showed me four prior art references— Your problem—getting back for a moment to the specific issue that you raised—is that there isn't anything in the claim construction that says, identify so they can work together. That's not what it says. It just says, identify some kind of condition. You admit that the location is identified, and I'm having a great deal of difficulty understanding why that isn't satisfactory. There's nothing about needing to work together in the claim construction. Your Honor, if that point were to be accepted, that would be to suggest that this patent should be read in a way that it's not enabling, that the patent is to be read in a way— But how do you take account of that in the construing of that? I think, Your Honor, that the law, as I understand it, is that a patent should be read with the presumption of validity, the presumption that the patent describes an invention that will work. And what Dr. Motoyama, what Rico are describing in the invention, is taking what was previously an integral mailing machine, dividing it into a separate operation panel and a separate printer. Now that they're separated, they need to have a protocol by which they can communicate with one another so that they can work together. And in response to your question— But it's not what the claim construction says. It doesn't say that. No, Your Honor, it does— It doesn't say that. It says in Claim 141 of the 120 patent— I'm talking about the jury instructions. Let's forget— Okay. You're stuck with the jury instructions. Absolutely. You didn't object to them. All it says is an indicia that corresponds to the computer or that corresponds to the operation terminal. That's a very general statement. It doesn't require very much. And if you didn't like this, you shouldn't have stipulated to it. You should have said it requires something more. But you didn't do that. But again, Your Honor, reading that in a vacuum would mean that the invention won't work, would mean that what is described in the rest of the patent is totally— You shouldn't have agreed to this claim construction. No, Your Honor— It strikes me that now, months later, years later, you don't like the claim construction you agreed to. And you say the invention requires something more. Maybe so, but that's too bad— Not at all, Your— —for the claim construction. If I may, not at all, Your Honor. What I never contemplated, and with all respect to Your opposing, no one could have reasonably contemplated that someone would read that claim construction, any indicia such as a model number or a serial number, corresponding to the identity operation terminal, to mean the address in the context of this invention. What about the laser writer reference? Doesn't the node ID provide a unique identifier? Absolutely not. It is strictly a location. There is no evidence whatsoever, and there's no disclosure in the Apple laser writer reference indicating that the node ID is a unique identifier. It is a location. Ms. Fredrickson testified, it's merely a location. And if you shuffle the components in the Apple network, you don't know which device is at any one of those locations. And the whole thrust of the invention is knowing what the device is so that you know, according to what you have hardwired in your printer or in your operation panel, what the characteristics are and how you can collaborate with it to accomplish what the device is attempting to accomplish. And I submit, Your Honors, that in proposing that this claim construction can be stretched beyond all reason, that it can be terribly expanded to be satisfied by a location that doesn't accomplish what you need to accomplish in the context of this invention, is not proper. You want to save your rebuttal time, what's left? I very much do, Your Honor. I thank you, Mr. Friedman. Ms. Conlon? Thank you. Good morning, Your Honor. At their core, the Modiyama claims that are at issue on appeal are directed to the transmission of different types of data between devices. And this was not new or novel in July of 1990, and both the jury and the district court properly found anticipation of these claims. Of the 23 original claims, most were admitted on the stand by RICO's own expert to be invalid. And of the five claims that are appealed, there is sufficient, if not overwhelming, evidence to support the jury's verdict. RICO has presented no arguments that the claims construction was incorrect, and so the sole issue for this court is the sufficiency of the evidence. In this case, it was a trial lasting almost four weeks. The experts on invalidity testified for, I believe, over 15 hours alone. And the district court, in a detailed 20-page decision, found anticipation of these claims, which means the appellate review here is narrow. And I heard Mr. Freedman's argument this morning to be directed to the jury who found anticipation. I'm sorry, the jury found anticipation, and the court affirmed that on a post-trial motion. Most of Mr. Freedman's argument here today was just disputing the evidence, which this court has said is improper for the purposes of overturning a verdict. This court has repeatedly stated that deference must be given to the jury's choices in weighing the evidence, in deciding between opposing positions, and in drawing factual inferences, in this case in favor of Pitney Bowes. I'd like to turn first to the identity of the operation terminal, since that seemed to be the focus of the court's attention today. And both claims simply require an operation terminal or computer send its identity to the business office device. Again, this is not a patentable claim in July of 1990. The identity, as the courts correctly noted, is any indicia that corresponds to the computer or operation terminal. RICO did not only not appeal that, but it was a construction that they agreed to at the district court level. If they wanted a different construction, they could have argued then, but now is not the time to seek a new construction. Both the SCSI ID and the laser writer use a SCSI ID and a note ID to identify the different devices on the network. If you can look at Appendix 5916, it states that the SCSI ID corresponds to the SCSI device's unique SCSI address. And in connection with the SCSI reference, there's an additional layer of identification, which Mr. Friedman did not mention this morning, and that is the SCSI ID 7 always identifies the host. So there's an additional layer in connection with the SCSI reference. This was presented to the jury, and the jury found in favor of Pitney Bowes in connection with that. Also note that Dr. Moriyama at trial testified that the purpose of his invention was a software handshake that allows two devices to know if they were able to dance. You heard Mr. Friedman's argument. He said that those location identifiers were not sufficient to allow the machines to work together. Well, they are. Which does seem to be the thrust of what the patent discusses, is making sure they communicate with each other in sufficient detail that they can accomplish their purpose. And one way to do that is to make sure that you have an address by which you can communicate with that device. And it precisely falls within the court's definition. If you look at the definition of the SCSI ID, it specifically talks about it corresponding to the device, which is the exact same language that's contained in the claims construction. Well, the claims construction then has an EG, you know, model number. Is that sent? In connection with the SCSI reference? No, it's not, Your Honor, but the EG I would point out as an example. And following that, it says a serial number. How about a serial number? Is that sent? That's part of the EG as well. In connection with the SCSI reference, it is not. But again... Does the SCSI anticipate? SCSI anticipates absolutely. But the jury found that and the district... So it doesn't send a model number or a serial number? No, but it sends any indicia that corresponds to the computer or the operation terminal. It does in connection with the SCSI ID, the note ID, and the SCSI ID 7 in fact sends an additional layer which is the host computer. What do you mean it sends an additional layer which is the host computer? I don't understand what you mean by that. Sure. In the SCSI references, you can line up a number of printers or computers to it, identified 1 through 7. SCSI ID 7, which is the unique identifier in connection with that particular computer, is always the host. So in addition to providing the SCSI ID, it says every time you see the SCSI ID 7, you have a host computer that's controlling the network. So it's an additional layer of identification that corresponds to it. Mr. Friedman's argument is basically arguing against the sufficiency or disputing the evidence that was before the jury and this court needs to give deference to it in connection with these claims. If the court doesn't have any more questions on that, I'd like to turn briefly to the means for processing limitations of claims 4 and 77 of the 120 patent. These claims are nearly identical and simply require a business office device that has an engine. I must say I found the claim construction here identifying the structure to be very confusing. I would have thought that the structure was a processor and the claim construction seems to have gotten confused by referring to a processor when the figure refers to a process. In other words, to a function rather than to a structure. In connection with the structure, I believe the court referenced a processor 111. Yeah, yeah, but it's the other one. It's the system control processor 102. That's not a structure. That's a process, right? Correct. The briefs are very confusing about that because you've got a sort of a claim construction which really doesn't make much sense in that respect. Well, and it underscores that at the district court level, the dispute between the parties was not whether there was processing in a control processor in connection with these claims. That's not what the focus of the dispute was and I think that was why the processor 111 should be identified as in figure 2 and not figure 1. In the Motiyama patent itself- But the structure should be the processor 111 in figure 2 and not the system control process because the system control process is a process, not a structure, right? Right. And in the Motiyama patent, if you look at the disclosure, it identifies one processor 111 that does two functions, the communication process and the system control process. In connection with Ms. Fredrickson's testimony, in connection with this case, she went through that for the jury, identified the processor 111 and said, this is the processor that controls the behavior of the device. She then went into the 507 patent and testified in detail regarding the teachings of that patent including at 101-766-767 identifying the item 80 in figure 4 as the control processor in the 507 patent that controls the behavior of the device. She then went through the claims on an element-by-element basis and explained how in connection with claims 4 and claims 77, how the device is processed- I understand all that, but I don't understand how the jury is supposed to figure this out when there's a mistake in the claim construction. How did this come about? Was this a stipulated claim construction? In connection with this one, I believe it was, Your Honor, but I would have to double check. But it may be that it was that the court had determined that. But if the jury looks at the figures, it's very clear it's the processor 111. There's only one processor disclosed in the Moriyama patent. And so the processor there is performing two functions very simply, transferring data and processing the data and controlling itself. Not a very difficult item to understand and comprehend. And then the jury, in fact, heard extensive testimony on it. But it would have been better if it said in the brief that there was a mistake in the claim construction. I find the brief very confusing on this one, because it's talking about structure being identified when there isn't structure. It's really a process when you're talking about the 102. Well, the processor 111 includes a system control process, Your Honor. It includes two processes, software that performs it, the system control process, and the communication process. The structure that performs that is the processor 111. And that was the import of the testimony. Well, that should have been what the structure was identified as, as the 111, not 102.  Well, it was identified properly as processor 111, which contains, in fact, in processor 111, the system control process. It also includes the communication process. But that structure is properly identified as processor 111, which includes the system control process 102. Again, the jury heard evidence on this and found in favor of Pitney Bowes. RICO, in connection with its appeal, has simply argued that- concede that a SCSI device would have processing capability. Yes. Dr. Adams did on multiple occasions. He also admitted that the data in the 507 patent is processed and controlled as well. So in this case, we had an unusual situation in which the experts, in large part, agreed in connection with what the prior teachings are. RICO's position on appeal is simply that it disagrees with that verdict and that evidence. I would point out that in connection with the SCSI ID, Ms. Fredrickson testified regarding the RAC Act commands. When the SCSI printer sends out a request to transfer data, it receives an acknowledgment back from the computer. The SCSI device, which clearly includes control processors, processes that and then controls itself by saying you may now- controls about itself by then sending out additional data. And that was testified in detail by the expert, our expert, Ms. Fredrickson, as well as concessions by Dr. Adams. Concessions which have been basically ignored for the purposes of this appeal. If I could turn briefly then, Your Honor, to the model identification- Wait a moment. Concessions as to- on this particular point, not on the identifier point, right? Correct, Your Honor. In connection with the means for processing clauses of Claims 4 and 77 of the 120 patent. In connection with the SCSI ID, I think the parties have fairly briefed them with respect to what the dispute was. But again, that was a situation in which the jury weighed the evidence and found in favor of Pitney Bowes on a claims construction that has not been appealed. I would also note, before turning to the Claim 31, that the Schumer, Cotto, and Motorola cases which are cited heavily in Rico's brief are in opposite here. In connection with the Cotto case, it was a reference that went into evidence and there was absolutely no testimony regarding it whatsoever. That is not the case here. We have cited literally dozens of pages with respect to these claim limitations. The Schumer case was a summary judgment case in which the expert affidavit was found to be confusing and not listing in the operative steps. And the Motorola case was a case in which it was a means plus function clause for means for synchronization. But it was admitted that the prior art did not contain one of the functions as construed by the court. This court properly said that it was expert testimony unsupported by documentary evidence and for that reason found the evidence lacking. That is not the case here and we have clearly cited to the evidence to support that. Finally, with respect to Claim 31, which simply requires a printer storing, then transmitting its model identification to an attached computer, many, many devices completed this task by July of 1990. And again, like many of the other claim elements, Claim 31 in its entirety was admitted by its expert on the stand, Dr. Adams testified that the laser writer reference teaches every single one of those elements of Claim 31. In addition, we presented the SCSI reference, which RICO admitted the VDP or vital product data, it meets the model identification requirement of Claim 31 and that it can transfer its model identification from the printer to the computer. In connection with that, RICO indicated or argued that the VDP is not taught to be stored in a SCSI computer. But Dr. Adams again admitted that the VDP is available for transfer out of the device, the VDP is stored since it is transmitted upon power up and the only way it can transmit the model ID and power up is if it's stored in the memory of the device that's inherent to one of ordinary skill in the art. So there are multiple references as with the other claims that anticipated the claims before the jury. In conclusion, Your Honor, the jury heard the evidence, which was substantial. They weighed it and they found in favor of Pitney Bowes. The record is replete with evidence to uphold the verdict, which this court is required to do unless the record under Third Circuit law is critically deficient of that minimum quantity of evidence needed to uphold the verdict and that is not the case here. Pitney Bowes had to defend against literally scores of claims. These patents were prosecuted over a period of 10 years. Many of them only had a single word difference between Claim 4 and Claim 77, for example, which the preamble had a printer versus a business office device. RICO clearly felt or hoped that the sheer volume of claims with lengthy limitations would overwhelm the jury. That did not work. This jury asked for, in this case- Any final thoughts, Ms. Conlon? Sure. These appealed claims are anticipated and they're obvious. This anticipation is the epitome of obviousness. Pitney Bowes would respectfully request that the district court's judgment finding in validity based on the jury verdict be affirmed. Thank you. Thank you. Mr. Friedman? Thank you, Your Honor. I just want to touch briefly on the claims we were talking about for most of the time that I was up originally, Claim 69 and Claim 141. Ms. Conlon said that the record shows that the SCSI ID number 7 is always the host. That's flatly untrue. The evidence shows that SCSI number 7 is typically the host, but Ms. Fredrickson testified that anything can be at number 7. In fact, you can have multiple computers on a SCSI bus, so you wouldn't know which computer is which in that event. Ms. Conlon also said that- In fact, one thing I agreed with that Ms. Conlon said, and you can listen to the tape. She said the SCSI ID corresponds to the address. It does correspond to the address. It doesn't tell you anything about what is at that address, and there's no second level of identification. If I may, Your Honors, because I did not get a chance to do so in light of your questions, I would just like to address briefly Claims 4 and 77 of the 120 patent. Judge Dyke, with respect to the system control process, if you look at footnote 2 on page 5 of the blue brief, we pointed out that as Pitney Bowes- I'm sorry, of the gray brief, Pitney Bowes acknowledged at page 10, footnote 3 of their red brief, that the Markman order had a typographical error, that the structure is the system control process. It's a set of routines, such as software, that processes commands received from the in response to that processing. Ms. Conlon just got up before you and said Pitney Bowes believes that it is the Processor 111 that is the structure. That's not the case at all. That's not what they said in their brief, but more importantly, that's not what Judge Brown said. The supporting structure is the system control process 102, and Ms. Fredrickson violated this court's teachings in Schumer and Coito. She never described how the supporting structure for claims 4 and 77 of the system control process is present. Why didn't she do it? Because she knew well that that supporting structure is not there in SCSI or in the 507 patent. All that is achieved, as we outline in our gray brief, all that is achieved with respect to the Echoplex message verification under the 507 patent, and with respect to the REC Act exchange in SCSI, all that is achieved is the first step of the sequence that is required by claims 4 and 77, and that is the transmission of the serial number from the printer to the operation panel. That's it. She mouthed the words processing, but there's no processing outside the communication process. There is nothing that matches the system control process. There is no processing of the information received from the separate operation panel for purpose of controlling the device. In the Echoplex protocol, all that happens- Some final thoughts for us, Mr. Friedman? Yes, I do, Your Honor. Thank you. Ms. Conlon, with respect to claim 31 of the 678 patent, Ms. Conlon said to you that there were many, many devices that completed this task in 1990. They presented three examples of prior art, and I invite your honors to read the references to the testimony that are in their briefs and that are in our briefs. They repeatedly say, Dr. Adams conceded this, Dr. Adams conceded that. He did no such thing, and as just one final point, Ms. Conlon got before you and said that the vital product data, the VPD under SCSI 2 is stored in the printer and then transmitted out to the operation panel. As we pointed out in our brief, and your honors can look at the SCSI 2 reference, it's right there at appendix 5990. Not only does it not disclose it, it expressly disclaims telling you where the data should be stored. Respectfully, your honors, RICO is entitled to judgment as a matter of law with respect to both anticipation and obviousness. Thank you. Thank you, Mr. Friedman. The next case is Gonzales versus the Department of Transportation.